UNITED STATES of America

v.

Roy Dale WALLACE.

Cr. No. 96–48–S.

United States District Court,
M.D. Alabama,
Southern Division.

July 3, 1996.

Gregory William Gill, McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, for Roy Dale Wallace.

Artur G. Davis, U.S. Attorney's Office, Montgomery, AL, for U.S.

*ORDER*

MYRON H. THOMPSON, Chief Judge.

Defendant Roy Dale Wallace is charged in a two-count indictment with possessing with intent to distribute cocaine and methamphetamine, in violation of 21 U.S.C.A. § 841(a)(1) (West 1981), and with carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C.A. § 924(c)(1) (West Supp. 1996). This criminal case is now before the court on two motions filed by Wallace to suppress evidence allegedly seized from his home. Wallace claims that the seizures were illegal because the police entered his house by force without having been refused entry. The United States Magistrate Judge held a hearing on the motions and has now recommended that the court grant them. The government has objected to the recommendation. For the following reasons, Wallace's motions will be granted.

## I. FACTUAL BACKGROUND

In the fall of 1995, authorities in Enterprise, Alabama received tips from confidential informants that Wallace was involved in the distribution of methamphetamine and cocaine.[1] On November 16, 1995, local police officers executed a search warrant they had obtained from a state court judge permitting them to search Wallace's residence.[2] The police arrived at Wallace's trailer home at approximately 9:30 p.m.[3] As the officers approached the trailer, they could see, through a closed plexiglass door, Wallace and three other individuals sitting in the trailer's front room.[4] The officers approached quickly, without drawing their weapons.[5] Once on the porch, Officer Robert Nelson knocked on the door and announced "Police, search warrant."[6] Officer Jimmy Hutto, who was designated to open the door after Nelson's announcement, immediately ripped open the door without waiting for any response from inside.[7] The door was opened with sufficient

---

**1.** Transcript of hearing held on May 28, 1996, at 46, 54, 55; defendant's exh. 2 at 1.

**2.** Transcript of hearing held on May 28, 1996, at 32; defendant's exh. 2 at 2.

**3.** Transcript of hearing held on May 28, 1996, at 20, 52.

**4.** *Id.* at 21, 53, 67.

**5.** *Id.* at 28.

**6.** *Id.* at 31.

**7.** *Id.* at 7, 24, 31; defendant's exh. 2 at 2.

force to rip it from its hinges.[8] While entering the home, Hutto and Nelson saw one of the men who was sitting on the sofa in the trailer's front room reach down under the sofa.[9]

Once inside, the police found drugs and a pistol in Wallace's jacket. They also found drug paraphernalia scattered around the trailer and more contraband in a van parked outside.[10]

As stated, the magistrate judge recommended that Wallace's motions to suppress be granted. The magistrate judge reasoned that the statutory "knock-and-announce" standard of 18 U.S.C.A. § 3109 (West 1985) applies in evaluating the execution of a search warrant by state police and that there were no exigent circumstances permitting the police to enter the house before they were "refused admittance," as required by the statute. The government objects, contending, first, that the magistrate judge erroneously applied § 3109 rather than the standard required by the fourth amendment to the United States Constitution; and, second, that, even if § 3109 applies in this case, the magistrate judge improperly found that there were no exigent circumstances. The court agrees with the recommendation of the magistrate judge, though for different reasons.

## II. DISCUSSION

### A. Section 3109

■ Section 3109 provides that an "officer may break open any outer or inner door or window of a house ... to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." Section 3109 therefore requires that an officer executing a search warrant notify the inhabitants of a house of his authority and purpose first, and only if he is refused admittance may he break open a window or door.

■ Most courts of appeals have held that continued inaction by a house's inhabitants after an officer's announcement constitutes a constructive refusal and permits an officer's forcible entry. See, e.g., United States v. Garcia, 983 F.2d 1160, 1168 (1st Cir.1993) (constructive refusal permitted forced entry after police waited ten seconds after knocking); United States v. Markling, 7 F.3d 1309, 1318 (7th Cir.1993) (constructive refusal after seven seconds when entry to motel room sought); United States v. Lucht, 18 F.3d 541, 549 (8th Cir.) (constructive refusal after 20 seconds), cert. denied, —— U.S. ——, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994). However, the Eleventh Circuit recently described a defendant's inaction upon the police's announcement "more as a failure to admit than a constructive refusal to admit." United States v. Hromada, 49 F.3d 685, 689 (11th Cir.1995). Semantics aside, a failure to admit after some reasonable period and an express refusal to admit have the same practical effect for the purposes of this analysis— they both meet the "refusal requirement" and permit an officer's forcible entry. Here, the magistrate judge found that the November 16 search was illegal under § 3109 because the police officers did not wait for a refusal from the inhabitants; instead, they announced their arrival and purpose at the same time as, or only a moment before, they entered Wallace's house.

■ Section 3109's "refusal requirement" is not a rigid one and may be dispensed with if there are "exigent circumstances" which excuse compliance. See Sabbath v. United States, 391 U.S. 585, 591 n. 8, 88 S.Ct. 1755, 1759 n. 8, 20 L.Ed.2d 828 (1968); see also Hromada, 49 F.3d at 689 (affirmative refusal of entry not required where officers would have to wait in vulnerable position); United States v. Pearson, 746 F.2d 787 (11th Cir. 1984) (exigent circumstances where officers reasonably believed that armed suspect and cache of automatic weapons were in the house); United States v. Garcia, 741 F.2d 363 (11th Cir.1984) (real possibility of officer injury, suspect escape or destruction of evi-

---

**8.** Transcript of hearing held on May 28, 1996, at 59.

**9.** Id. at 24; defendant's exh. 2 at 2.

**10.** Transcript of hearing held on May 28, 1996, at 39, 63; defendant's exh. 2 at 2.

dence constitutes exigent circumstances). The magistrate judge found that there were no exigent circumstances that excused the officers' contemporaneous announcement and entering.

The government argues that, because § 3109 is a federal statute, it is not applicable in this case, where local police officers executed a search warrant issued by a state judge. Rather, according to the government, only the fourth amendment regulates the legality of such a search. The fourth amendment provides, in relevant part, that "The right of the people to be secure in their persons, house, papers, and effects, against *unreasonable searches* and seizures, shall not be violated." U.S. Const. amend. IV (emphasis added). The government maintains that the fourth amendment's "reasonableness" requirement, unlike § 3109, places on police officers the duty only to knock and announce their presence when executing a proper search warrant; it does not require that the officers wait for a refusal from inside before they enter.

The Eleventh Circuit Court of Appeals has not clearly announced whether § 3109 governs the conduct of local police officers executing a state search warrant. Most of the other circuits have ruled on this issue, however. In a recent case, the Second Circuit Court of Appeals announced that § 3109 should apply to all searches resulting in federal prosecutions, regardless of whether the investigations involve federal authorities. *United States v. Brown,* 52 F.3d 415 (2nd Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 754, 133 L.Ed.2d 701 (1996). The Second Circuit viewed § 3109 as an evidentiary rule relating to the admissibility of evidence, rather than a rule of conduct directly controlling the behavior of state officials. The court stated that application of § 3109 was "dictat[ed by] the importance that evidentiary rules be applied uniformly in federal courts." *Id.* at 420.

Several other circuits have found, however, that § 3109 does not apply when warrants are executed by state officers operating un-

der color of state law, and that in these cases the fourth amendment's "reasonableness" standards must be used to evaluate the legality of a search. *See, e.g., United States v. Bates,* 84 F.3d 790, 792 (6th Cir.1996); *United States v. Murphy,* 69 F.3d 237, 242 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1032, 134 L.Ed.2d 109 (1996); *United States v. Jewell,* 60 F.3d 20, 23 n. 2 (1st Cir.1995); *United States v. Stiver,* 9 F.3d 298, 301 (3rd Cir.1993), *cert. denied,* 510 U.S. 1136, 114 S.Ct. 1115, 127 L.Ed.2d 425. However, of the courts that have not applied § 3109 to state officer action, several have found that the statute's requirements nonetheless inform their analyses under the fourth amendment's "reasonableness" standard. *See, e.g., United States v. Smith,* 63 F.3d 956, 962 (10th Cir.1995), *vacated on other grounds,* —— U.S. ——, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996); *United States v. Kennedy,* 32 F.3d 876, 882 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995).

Relying on the Second Circuit's decision in *Brown,* the magistrate judge held that § 3109 applied here. This court need not reach the question of § 3109's application, however, because whether the state officers were subject to § 3109's formal refusal requirement is not dispositive. As the court will explain below, under the fourth amendment's reasonableness standard, the officers were required to wait for a refusal or for some period after announcing their arrival before entering Wallace's home by force in the absence of exigent circumstances. Thus, even if § 3109 does not apply in state actor cases such as this one, the police officers' execution of the search warrant on Wallace's home was subject to a refusal requirement.[11]

### B. Fourth Amendment

In *Wilson v. Arkansas,* —— U.S. ——, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the Supreme Court held that the common-law knock-and-announce requirement for search warrants applies under a fourth amendment reasonableness analysis absent special cir-

11. In his motions to dismiss, Wallace also contended that the officers violated the "refused admittance" requirement in Alabama's knock-and-announce statute, 1975 Ala.Code § 15-5-9 (Michie 1995). He has not reasserted this argument.

cumstances. *Id.* at ——, 115 S.Ct. at 1918. *Wilson* left open the exact contours of the constitutional knock-and-announce requirement. However, the discussion in *Wilson* leads to the conclusion that the common-law, and now constitutional, knock-and-announce principle includes its own refusal requirement.

In determining the content of the fourth amendment's "reasonableness" requirement for searches, the Court in *Wilson* looked to a variety of common-law authorities. These authorities included English common law, *see, e.g., Semayne's Case,* 77 Eng.Rep. 194 (K.B.1603); *Lee v. Gansell,* 98 Eng.Rep. 700 (K.B.1774); treatises and commentaries, *see, e.g.,* 1 M. Hale, Pleas of the Crown \*582; and various early state statutes and cases. The Court found in these common-law authorities a clearly established knock-and-announce principle which, the Court announced, therefore forms a part of the modern fourth amendment reasonableness analysis. *Wilson,* —— U.S. at —— – ——, 115 S.Ct. at 1916–18.

Following the Supreme Court's approach, this court finds in these same sources a refusal requirement embedded in the common-law knock-and-announce principle. In *Semayne's Case,* "usually cited as the judicial source of the common-law standard," *Wilson,* —— U.S. at —— n. 2, 115 S.Ct. at 1917 n. 2, the British common-law court stated that, "when the King is party, the sheriff (if the doors be not open) may break the party's house ... *if otherwise he cannot enter."* 77 Eng.Rep. at 195 (emphasis added). Similarly, in *Lee v. Gansell,* the court found that a door may be broken "when the due notification and demand has been made *and refused."* 98 Eng.Rep. at 705 (emphasis added). The famous commentator Sir Matthew Hale concurred, describing the common-law rule for arrest warrants: "the officer may break open the door, if he be sure the offender is there, if after acquainting them of the business, and demanding the prisoner, *he refuses to open the door."* 1 M. Hale, Pleas of the Crown \*582 (emphasis added).

■ *Wilson* further cites state statutes, which, as the Court describes them, "specifically embrac[e] the common-law view that the breaking of the door of a dwelling was permitted *once admittance was refused,"* *Wilson,* —— U.S. at ——, 115 S.Ct. at 1917 (emphasis added) (citing Act of Nov. 8, 1972, ch. 15, ¶ 6, in Acts and Laws of Massachusetts 193 (1782); Act of Apr. 13, 1782, ch. 39, § 3, in 1 Laws of the State of New York 480 (1886), among others). Each of these authorities makes clear that a refusal requirement is embedded in the common law's knock-and-announce principle. Adopting the reasoning of the *Wilson* court, this court must consider the common-law knock-and-announce principle in its entirety, including the refusal requirement, when making a reasonableness determination; it should not pick and choose among its elements.

The policies behind the common-law knock-and-announce principle similarly support the existence of a refusal requirement. *Wilson* recognized that one of its purposes was to avoid the destruction of property, " 'by which great damage and inconvenience might ensue.' " —— U.S. at ——, 115 S.Ct. at 1918 (quoting *Semayne's Case,* 77 Eng. Rep. at 196). *Semayne's Case* makes reference to the rule's other purposes, which include protecting the inhabitants from violence and maintaining their privacy. 77 Eng. Rep. at 195 ("the house of every one is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose").

■ These policy considerations are meaningful today, as well. The knock-and-announce rule continues to serve the same fundamental interests, including (1) protecting law enforcement officers and household occupants from potential violence; (2) preventing the unnecessary destruction of private property; and (3) protecting people from unnecessary intrusion into their private activities. *United States v. Sagaribay,* 982 F.2d 906, 909 (5th Cir.), *cert. denied,* 510 U.S. 854, 114 S.Ct. 160, 126 L.Ed.2d 120 (1993); *see also United States v. Nolan,* 718 F.2d 589, 596 (3rd Cir.1983). These interests can only be served by a knock-and-announce rule that includes a refusal requirement. Although a contemporaneous announcement and entering might help to protect police officers from the danger of injury from fearful home-

owners, it would do nothing to prevent destruction of private property or to maintain privacy within the home. Eliminating the refusal requirement would greatly undermine the practical purposes of the knock-and-announce rule.

Modern authorities also assume the existence of a refusal requirement in the constitutional knock-and-announce rule. "It is not enough, of course, that the police [in executing a warrant] gave the necessary announcement prior to entry; they must first have been refused admittance." 2 Wayne R. La-Fave, Search and Seizure § 4.8(c) (3rd ed. 1996); *see also United States v. Smith*, 63 F.3d at 962 (applying § 3109's "constructive refusal" requirement to fourth amendment reasonableness analysis after *Wilson* ).

 For all of these reasons, the court concludes that the fourth amendment, as put by the *Wilson* court, "specifically embrac[es] the common-law view that the breaking of the door of a dwelling was permitted *once admittance was refused.*" —— U.S. at ——, 115 S.Ct. at 1917 (emphasis added).[12] This court further finds, as a result, that the Enterprise police were bound by a refusal requirement under the fourth amendment when they executed the search warrant

against Wallace. It is undisputed that the police did not comply with the refusal requirement, but that they entered Wallace's home immediately upon their announcement. Therefore, the court now turns to the government's alternative argument that compliance with a refusal rule was not required due to special circumstances.[13]

## C. Exigent Circumstances

 Officers may be excused from the knock-and-announce and refusal requirements of the fourth amendment under special, or exigent, circumstances.[14] A reasonable fear of violence will excuse compliance under both the statutory and constitutional standards. *See, e.g., Wilson,* —— U.S. at —— – ——, 115 S.Ct. at 1918–19 (indicating exception under constitution because "the [common-law] presumption in favor of announcement would yield under circumstances presenting a threat of physical violence"); *cf. Pearson,* 746 F.2d at 792 (exigent circumstances excuse knock-and-announce requirements of § 3109 where suspects armed, had prior felony convictions, and agents had reason to believe house contained enormous cache of firearms).

**12.** In the opening part of its brief, the government asserted generally that "the doctrine of inevitable discovery would still validate the search conducted at Wallace's home." Government's brief filed on June 17, 1996, at 2. With this statement, the government is making only a legal argument. The government has not offered, or pointed to, any evidence at the hearing before the magistrate judge to provide a factual basis for this assertion. Rather, it later clarified in its brief that it was making only a legal argument to support its contention that the refusal requirement should not be part of the fourth amendment:

"From a policy standpoint, there is much that recommends against a refusal requirement. Principally, such a rule would be incompatible with the doctrine of 'inevitable discovery.' *Nix v. Williams,* 467 U.S. 431, 440–48, 104 S.Ct. 2501, 2507–2511 [81 L.Ed.2d 377] (1984). In *Nix,* the court recognized that if the prosecution would have discovered illegally obtained evidence by lawful means, the exclusion of the evidence confers an unfair windfall upon the defendant. *Id.* Another rationale of *Nix* is that the purpose of deterring police misconduct is not served by exclusion in the face of a valid basis for discovery."

*Id.* at 6–7. This legal argument requires only a brief response. The meaning of the fourth amendment's reasonableness requirement should "be guided by the meaning ascribed to it by the Framers of the Amendment." *Wilson,* —— U.S. at ——, 115 S.Ct. at 1916. And, as the Court in *Wilson* explained, the requirement "specifically embrac[es] the common-law view that the breaking of the door of a dwelling was permitted *once admittance was refused.*" *Id.* at ——, 115 S.Ct. at 1917 (emphasis added).

**13.** No evidence was offered that any of the trailer occupants expressly refused the officers admittance, and, in fact, Officer Nelson testified that there was no oral response from inside the house after he knocked and announced the police presence. Transcript of hearing held on May 28, 1996, at 25.

**14.** Situations that excuse compliance with § 3109 are also referred to as "exigent circumstances." The court is mindful, however, that the precise set of exigent circumstances may differ between the statute and the constitutional reasonable search rule.

■ The government argues that Officer Hutto's fear that one of the occupants of the trailer was reaching for a weapon constitutes an exigent circumstance and excuses compliance with the refusal requirement. However, based on a careful review of the record in this case, the court finds Hutto's testimony that he saw a man reach down *before* he ripped open the door is not credible. First of all, as the government concedes,[15] Hutto's description of events is directly contradicted by the descriptions given not only by Wallace but by the two other officers who were present at the warrant's execution.[16] Officer Nelson testified that Hutto ripped the door open immediately upon his announcement and before Hutto saw the man reach down. Nelson stated:

"[I] [k]nocked on the trailer, on the side, right by the door, said 'Police Department, search warrant.' Investigator Hutto grabbed the handle of the screen door, pulled it.... It swung open. And *at that point,* Mr. McClendon went down, reached down between his legs. And, at that time, we thought he was reaching for a gun."[17]

The supervising officer, who was also present at Wallace's trailer, filed a case report similarly describing Hutto's entry as simultaneous with the observation of the man's reach: *"As Investigator Hutto entered,* he observed one of the white males quickly place his right hand down between the loveseat [and] a stand."[18] Neither Nelson nor the supervising officer mentions that Hutto feared for his life before entering or entered in response to one of the occupants having reached down between the loveseat. The court agrees with the findings of the magistrate judge that the events were as given in the testimony of Officer Nelson and summarized in the official case report.

More importantly, this reading of the evidence from Nelson and the case report is reinforced by additional evidence. Upon being asked to summarize the knock-and-announce procedure as he understood it, Nelson testified as follows:

"Q: And you mentioned knock and announce as if you're familiar with that term. Is that a term you're familiar with as a police officer?

A: Yes, sir.

Q: What does it mean to you, as a policy?

A: *The Knock and Announce Rule is to basically identify yourself before entering the residence.*

Q: When did you first become aware of this rule, Officer Nelson?

A: Police Academy. Prior to that, seen on TV.

Q: And is that something that police officers are pretty much well trained and steeped in?

A: Yes, sir."[19]

Similarly, Hutto summarized his understanding of the procedure as follows:

"Q: ... What is Knock and Announce, as you understand it?

A: Officer Nelson's job was to run up to the house, to the residence, with us ... *knock on the trailer, scream Police Department search warrant. And then it's my job after he does that, open the door.*

Q: How long have you known about the Knock and Announce policy, Officer Hutto?

A: Ever since I've been with the Police Department, sir."[20]

Nelson's and Hutto's failure even to hint at the need to wait for a refusal is conspicuous. Officer Nelson further testified that in executing a search warrant, one officer is generally assigned to be the knocker and announcer (as he was in this case) and one officer is

---

**15.** Government's brief filed on June 17, 1996, at 2–3.

**16.** Wallace testified that *"as [Hutto] was snatching the door off the hinges,* he hollered out, 'Police Department, search warrant.' He was already in the house before he got all that out of his mouth."* Transcript of hearing held on May 28, 1996, at 7 (emphasis added).

**17.** Transcript of hearing held on May 28, 1996, at 24 (emphasis added).

**18.** Id. at 76; defendant's exh. 2 at 2.

**19.** Transcript of hearing held on May 28, 1996, at 23 (emphasis added).

**20.** *Id.* at 58 (emphasis added).

assigned to be the door opener (as Hutto was in this case).[21] He omits mention of any officer having the duty to determine if and when there has been a refusal. This evidence clearly reflects that the officers' understanding of the rule did not include waiting at the door for a refusal, an invitation, or demonstrated inaction on the part of a house's occupants before ripping open a door. Instead, the policy was, as Hutto aptly summarized, you "knock on the trailer, scream Police Department search warrant. And then . . . after he does that, open the door."[22]

Finally, the conclusion that contemporaneous notice and entry is the policy of these Enterprise police officers is supported by the fact that the officers did not appear to find it problematic or illegal that Hutto was already entering the house as he saw one of the occupants reaching down.[23] If they viewed the policy as requiring a refusal, they surely would have raised with Hutto why he failed to comply with this requirement, and the supervising officer surely would have included in his official report a statement either noting that Hutto had improperly failed to comply with the refusal requirement or explaining that, because of special circumstances, he did not need to comply.

█ In a footnote to its objection, the government makes reference to the officers' generalized fear of the harm that might come from entering a residence occupied by potential drug dealers, and it argues that that fear could constitute an exigent circumstance. However, there is no evidence that such a fear, if it existed, motivated the officers to enter the house without waiting. Neither Hutto nor Nelson articulated that as a rationale for his actions. The officers were not any more nervous about this search warrant, potentially involving illegal drugs, than they were about executing all search warrants. Officer Nelson testified that "we always expect a confrontation when we enter a residence."[24] He also read testimony from an earlier state court proceeding indicating that the officers did not expect to be confronted with a weapon that evening. *Id.* at 27. And, in describing the officers' mind-set that evening, Officer Nelson testified:

"Q: You did not expect a gun to be used in any way against you or the officers that evening when you executed the search warrant, is that true?

A: Fear was there, but expecting—were we looking to get shot at that night?

Q: Yes.

A: No.

Q: Now, when you say fear, you're just talking about the general fear you always have anytime you execute a search warrant, isn't that right?

A: That's correct."[25]

There is therefore no evidence that there was any particularized fear of executing this search warrant that would justify an exception to constitutional and statutory knock-and-announce rules. A mere generalized fear inherent in all searches cannot constitute special or exigent circumstances.[26]

The evidence seized from Wallace's trailer must be suppressed.

Accordingly, it is ORDERED:

(1) That the government's objections to the recommendation of the magistrate judge, filed on June 17, 1996, are overruled;

(2) That the recommendation of the United States Magistrate Judge, filed on June 10, 1996, is adopted; and

---

**21.** *Id.* at 22.

**22.** *Id.* at 58.

**23.** Indeed, it appears that the United States Attorney shares the officers' belief that the fourth amendment does not include a refusal requirement. Government's brief filed on June 17, 1996, at 6–8.

**24.** Transcript of hearing held on May 28, 1996, at 26.

**25.** *Id.* at 47.

**26.** As the government acknowledged, "Several courts have concluded that permitting a generalized fear to constitute an exigent circumstance would carve too deep a hole in the Fourth Amendment. *See, e.g. United States v. Marts,* 986 F.2d 1216, 1218 (8th Cir.1993)." *Government's* brief filed on June 17, 1996, at 8 n. 5.

(3) That the motions to suppress filed by defendant Roy Dale Wallace on April 17 and 29, 1996, are granted.

DONE.