**UNITED STATES of America,**

v.

**Alton SHERMAN, Richard Rodrigue, Defendants.**

**No. CR–04–11–B–W.**

United States District Court, D. Maine.

Nov. 12, 2004.

Wendy D. Hatch, Law Offices of Donald F. Brown, Brewer, Leonard I. Sharon, Sharon, Leary & Detroy, Auburn, for Alton Sherman (1), Richard Rodrigue (2), Defendants.

Daniel J. Perry, Office of the U.S. Attorney, District of Maine, Bangor, for USA, Plaintiff.

## ORDER REJECTING IN PART THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE AND GRANTING DEFENDANTS' MOTIONS TO SUPPRESS

WOODCOCK, District Judge.

Rejecting in part the Recommended Decision of the Magistrate Judge, this Court concludes evidence seized in violation of the Fourth Amendment's knock-and-announce rule must be suppressed.

## I. THE MOTIONS TO SUPPRESS

Facing federal drug charges, Defendants Rodrigue and Sherman on March 24, 2004, filed separate Motions to Suppress Evidence. The Motions raised two identical grounds: (1) the affidavit in support of the warrant did not contain specific facts sufficient to support a probable cause finding; and, (2) the officers failed to execute the warrant properly in accordance with the "knock and announce" rule. After the Government filed a Response and after an evidentiary hearing, the United States Magistrate Judge filed with the Court on July 21, 2004 her Recommended Decision to Deny the Motions to Suppress Evidence. Defendant Rodrigue filed Objections to the Recommended Decision on August 18, 2004, and Defendant Sherman followed on August 23, 2004; the Government filed an Objection to the Recommended Decision on September 23, 2004. Defendants Rodrigue and Sherman filed Responses on October 12, 2004, and October 13, 2004 respectively. This Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record and has made a de novo determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; this Court REJECTS in part the Recommended Decision and GRANTS the Defendants' Motions to Suppress.

## II. STANDARD OF REVIEW

This Court referred these Motions to Suppress to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), which permits "a district court to refer to a magistrate a motion to suppress evidence and authorizes the district court to determine and decide such motion based on the record developed before a magistrate, including the magistrate's proposed findings of fact and recommendations." *United States v. Raddatz*, 447 U.S. 667, 669, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Upon objection, the statute requires the district court to make "a de novo determination of those portions of the report or specified proposed findings or recommendations to

which objection is made." 28 U.S.C. § 636(b)(1)(C). The Supreme Court has clarified that the "*de novo* determination" of § 636(b)(1)(C) does not mandate a *de novo* hearing.[1] *Raddatz,* 447 U.S. at 674, 100 S.Ct. 2406. If the district court elects not to hold an evidentiary hearing, it is required to consider the record which has been developed before the magistrate and give "fresh consideration" to those issues to which specific objection has been made. *Id.* at 675, 100 S.Ct. 2406 (quoting H.R.Rep. No. 94–1609, at 3 (1976)).

### III. THE GOVERNMENT'S OBJECTION

The Government's objection focuses on disparities between the Magistrate Judge's factual findings and the officers' testimony at the evidentiary hearing on two specific issues: 1) whether the officers announced their presence before entering the premises; and, 2) whether there was a delay between the knock and the entry. At the hearing, the officers testified there had been an announcement before entering the premises. They also testified there had been a five to ten second delay between the knock and announcement and the entry. Transcript of Testimony of *Chief Lyford* at 30 (June 24, 2004) (hereinafter "Trans.") ("We went up to the door. The door—they banged on the door. We announced that—the sheriff's department, that there was a search warrant, *waited five to seven seconds,* and then entered the property.") (emphasis added); Trans., *Lieutenant Young* at 13 ("I think *five to ten seconds.*") (emphasis added); Trans., Deputy Dow at 49–50 ("We listened. I knocked. Somebody—I specifically recall Chief Lyford saying, 'Sheriff's Office. Search Warrant,' and listened, rattled the

door. The door was unlocked. I opened it and went inside.").

The Magistrate Judge rejected this testimony and relied instead upon the contents of contemporaneous police reports prepared by Deputy Dow and Lt. Young. Deputy Dow's report stated in part: "I knocked on the door to the camp and opened it. I entered the camp and shouted *Sheriff's Office—Search Warrant!*" *Gov't Ex.* 2 (emphasis in original). Lt. Young's June 2002 report stated in part: "Upon arrival we knocked on the door, stated that we were the Sheriff's Office and had a search warrant, waited several seconds and then opened the door." *Gov't Ex.* 3.

The Government objects to the Magistrate Judge's reliance on the contents of the contemporaneous police reports over the later testimony of the officers. To buttress its objection, the Government points out two errors in the Magistrate Judge's recitation of the facts. In the Recommended Decision, Magistrate Judge Kravchuk wrote:

> "Deputy Dow and Lt. Robert Young of the Sheriff's Department testified that the night prior to the suppression hearing in front of me they met together and discussed the case."

*Magistrate Judge's Recommended Decision* at 5.

The Government argues only Lt. Young, not both Lt. Young and Deputy Dow, testified about this meeting. The Government is correct, but the distinction is trivial. Lt. Young testified he met with Deputy Dow the day before the suppression hearing and discussed the case; Deputy Dow was never asked about the meeting. The unrebutted evidence establishes Lt. Young and

---

**1.** On the other hand, the statute authorizes the district court to order an evidentiary hearing if it elects to do so. 28 U.S.C. § 636(b)(1)(C).

Deputy Dow met to discuss the case the day before the hearing.

The Government next contends the Magistrate Judge was in error in the following finding:

> Lt. Young testified that as a result of Dow refreshing his recollection he now remembers that before entry was made into the camp, Dow knocked at the door and then Chief Lyford of the Milo Police Department announced, "Piscataquis County Sheriff's Office, Search Warrant" and then after a 5 to 7 second pause, Dow and the Chief entered the camp followed by Young. Young testified that he remembered these events now, two years later, because when Dow reminded him of the procedure, he then recalled that he had found it extraordinarily unusual at the time for the Chief to be announcing on behalf of the Sheriff's Department. However, *he had apparently forgotten that fact until reminded of it by Dow.*

Recommended Decision at 5–6 (emphasis added).

The Government asserts Dow did not refresh his recollection about when the announcement was made, but only about who made the announcement. First, the Government is incorrect about what the Magistrate Judge found. Lt. Young's contemporaneous report states that the police announced their presence before entering. *Gov't Ex.* 3. In referring to the "forgotten fact," the Magistrate Judge was referring to Lt. Young's recollection that it was Chief Lyford who had made the announcement. In any event, whether the announcement was made before or upon entering is immaterial. The Magistrate Judge's critical finding is "several seconds (five being the outside maximum)" elapsed from the time of the knock to the time of the entry. It is this finding in the totality of the circumstances that determines the constitutionality of the entry.[2]

This Court has performed a *de novo* review of the facts found by the Magistrate Judge and adopts the facts as set forth in the Recommended Decision with one exception. *See United States v. Raddatz,* 447 U.S. 667, 680 n. 7, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("[W]e assume it is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach."). The finding that both Deputy Dow and Lt. Young testified about their meeting the day before the suppression hearing is amended to reflect only Lt. Young testified about their meeting.

## IV. THE DEFENDANTS' OBJECTIONS[3]

The Defendants object to the Magistrate Judge's Recommended Decision on the grounds that the search violated the knock-and-announce rule incorporated into

---

**2.** The Magistrate Judge's finding no pre-entry announcement was made supports, but is not necessary, for this Court's conclusion that an unlawful search took place. Furthermore, since Magistrate Judge Kravchuk found that five seconds was the maximum amount of time from the time the officer knocked to the time he entered and since regardless of what version of the evidence is accepted, the announcement came after the knock, both the knock and the announcement must have taken place within five seconds of entry.

**3.** After reviewing *de novo* the Magistrate Judge's Recommended Decision, this Court ACCEPTS that part of the Decision dealing with probable cause. This Order, therefore, only discusses the "knock and announce" rule.

the Fourth Amendment, and no exigent circumstances justified the violation.

### A. Factual Background.

The Magistrate Judge found the following facts, which this Court adopts, relating to the execution of the warrant:

After an investigation and through aerial surveillance, law enforcement officers located a "large grow area" in an isolated part of Piscataquis County containing approximately 100 marijuana plants and some Pro–Mix potting soil. Over the course of a week, officers observed both a white Polaris ATV and a small black vehicle bearing registration plates GTOCRUZ loaded with Pro–Mix at the site. After the plants were confiscated, a local police officer informed the investigating officer that an ATV and a black car with the GTO-CRUZ plates were seen parked behind the Knight's Landing Camp. Armed with this information, Deputy Sheriff Dow of the Piscataquis County Sheriff's Department obtained a search warrant.

At the time the warrant was executed, there were three law enforcement officers present. Deputy Sheriff Dow of the Piscataquis County Sheriff's Department and Chief Lyford of the Milo Police Department stepped up onto the porch of the Knight's Landing Camp to execute the warrant. Lt. Young of the Piscataquis County Sheriff's Department was a short distance away, off to the side of the porch. Dow knocked on the door, waited several (up to five) seconds, turned the knob, found the door unlocked, crossed the threshold, and did so, announcing "Sheriff's Department, search warrant!" No other announcement of purpose and identity was made by any other officer prior to entry. Both Defendants were in the camp at the time of entry.

In addition to those facts found by the Magistrate Judge, this Court finds the following: The officers sought and were granted a warrant to search for: 1) scheduled drugs, namely marijuana; 2) drug paraphernalia; 3) the ATV; and, 4) other evidence, such as records, photographs, etc., that would be consistent with drug trafficking. Although Deputy Dow stated in his Affidavit it is common for traffickers to be involved in more than one scheduled drug, the only identified drug was marijuana. The camp was very small, one story with a little loft; the building was approximately 20′ by 20′. Six law enforcement officers arrived at the camp on June 11, 2002 at 9:15 a.m. Three went to the front door; three remained outside.

There is no evidence the officers had any information about the suspects. There is no indication the officers were aware of prior criminal records or any history of violence. There is no direct evidence of any drugs other than marijuana and specifically no pre-search evidence of any easily disposed of drug, such as cocaine. There is no pre-search evidence that the suspects possessed any dangerous weapons, including firearms.

### B. Discussion.

#### 1. The Law.

The Fourth Amendment sets a general proscription against unreasonable searches and seizures:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

U.S. Const. amend. IV. The United States Supreme Court has explained that determining whether a search is unreasonable

within the meaning of the Fourth Amendment requires a fact-based inquiry.[4] *United States v. Banks,* 540 U.S. 31, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003); *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Ker v. California,* 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Go–Bart Importing Co. v. United States,* 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931). In performing this inquiry, however, the Supreme Court has held the common law knock-and-announce principle is properly one focus of the analysis. *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).[5] The Supreme Court subsequently rejected the adoption of a blanket rule which would have suspended the knock and announce rule for felony drug cases, reiterating the need for a case by case reasonableness inquiry. *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); *United States v. Sargent,* 319 F.3d 4, 8 (1st Cir.2003).

Following *Wilson,* the courts have been called upon to rule on ever decreasing amounts of time between the knock and the entry. Appropriately, the results have varied with the facts. *United States v. Pennington,* 328 F.3d 215, 221 (6th Cir. 2003), *cert. denied* —— U.S. ——, 124 S.Ct. 1039, 157 L.Ed.2d 901 (2004) (8 to 10 seconds reasonable); *United States v. Pinson,* 321 F.3d 558 (6th Cir.2003) (5–10 seconds reasonable); *Sargent,* 319 F.3d at 11–12 (5 seconds reasonable); *United States v. Granville,* 222 F.3d 1214, 1218 (9th Cir. 2000) (5 seconds unreasonable); *United States v. Dice,* 200 F.3d 978 (6th Cir.2000) (a "few" seconds unreasonable); *United States v. Moore,* 91 F.3d 96 (10th Cir.1996) (3 seconds insufficient); *United States v. Gatewood,* 60 F.3d 248 (6th Cir.1995) (10 seconds reasonable); *State v. Nordstrom,* 200 Ariz. 229, 25 P.3d 717 (2001) ("only a few seconds" reasonable); *State v. Williams,* 800 So.2d 819 (La.2001) (between 5 and 15 seconds reasonable); *State v. Reynoso–Hernandez,* 2003 ME 19, 816 A.2d 826 (2003) (20 seconds reasonable); *State v. Herrick,* 1997 N.D. 155, 567 N.W.2d 336 (1997) (3 seconds unreasonable); *appeal after remand,* 1999 N.D. 1, 588 N.W.2d 847. As the First Circuit has pointed out, these rulings are "highly contextual." *Sargent,* 319 F.3d at 9.

Only last year, the Supreme Court revisited the "knock and announce" rule in *United States v. Banks,* 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003). In *Banks,* the North Las Vegas Police Department, with information that Mr. Banks was selling cocaine at home and with a search warrant, arrived at his two-bedroom apartment at 2:00 P.M. on a Wednesday afternoon. *Id.* at 523. They called out "police search warrant," and rapped on the door. *Id.* Hearing no response and waiting 15 to 20 seconds, they broke open the front door and found Mr. Banks, dripping wet, emerging from a shower. *Id.* The search produced weapons, crack cocaine and other evidence of drug dealing. *Id.* In *Banks,* the Supreme Court concluded the 15 to 20 second delay did not violate the Fourth Amendment. Agreeing that "this call is a close one," *Id.* at 526, the Court emphasized exigencies attendant to the search:

---

**4.** The Defendants have also claimed the search violated 18 U.S.C. § 3109. In *United States v. Ramirez,* 523 U.S. 65, 73, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998), the Supreme Court held that " § 3109 codifies the exceptions to the common-law announcement requirement."

**5.** In *Wilson,* Justice Thomas traced the origin of the knock and announce rule to at least *Semayne's Case,* 77 Eng. Rep. 194 (K.B. 1603) and perhaps to a statute enacted in 1275. *Wilson,* 514 U.S. at 932 n. 2, 115 S.Ct. 1914.

On the record here, what matters is the opportunity to get rid of cocaine, which a prudent dealer will keep near a commode or kitchen sink. The significant circumstances include the arrival of the police during the day, when anyone inside would probably have been up and around, and the sufficiency of 15 to 20 seconds for getting to the bathroom or the kitchen to start flushing cocaine down the drain.

*Id.* at 527.

The *Banks* analysis is highly fact intensive. The Court expressly disavowed attempts to reduce the reasonableness analysis to the application of a mechanistic formula. *Banks* states:

Although the notion of reasonable execution must therefore be fleshed out, we have done that case by case,. largely avoiding categories and protocols for searches. Instead, we have treated reasonableness as a function of the facts of .cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones.

*Id.* at 525.

In passing, the *Banks* opinion discussed and rejected two Ninth Circuit attempts to turn "the notion of a reasonable time under all the circumstances into a set of subrules." *Id.* at 528. It disapproved a "four-part scheme for vetting knock-and-announce entries" and reiterated its decision in *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), which disapproved a framework for ˙making reasonable suspicion determinations. *Id.* at 528. Contrasting a search warrant

for cocaine with a search warrant for a stolen piano, the Court stated: "Attention to cocaine rocks and pianos tells a lot about the chances of their respective disposal and its bearing on reasonable time. Instructions couched in terms like 'significant amount of time' and 'an even more substantial amount of time,'...tell very little." *Id.*

■ This does not mean this Court is left without guidance. The Supreme Court has laid down precepts that clarify the inquiry. Where the search takes place matters. A search of a person's home strikes at "the very core" of the Fourth Amendment, since the law has long recognized "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo v. United States*, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)(quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)). In *Sargent*, the First Circuit wrote: "The common law knock and announce requirement recognizes the deep privacy and personal integrity interests people have in their home. It also serves to protect the safety of police officers by preventing the occupant from taking defensive measures against a perceived unlawful intruder." *Sargent*, 319 F.3d at 8.

■ What is sought matters. It matters primarily because of the risk of disposal (e.g. cocaine) or a risk of danger. (e.g. stolen firearms). *Banks* stressed the police had information the defendant was selling cocaine, an easily disposable drug. The Court ˙stated: "On the record here, what matters is the opportunity to get rid of cocaine, which a prudent dealer will keep near a commode or kitchen sink." *Banks*, 124 S.Ct. at 527. Thus, a stolen piano is different from cocaine rocks.[6] *See*

---

6. *Banks* clarified that the size of the establish-   ment is not usually the issue. *Id.* at 527

*United States v. One Parcel of Real Property*, 873 F.2d 7, 9 (1st Cir.1989) (five to ten second wait held reasonable where "officers had probable cause to believe that the occupants possessed cocaine, a substance that is easily and quickly removed down a toilet"); *United States v. Sargent*, 150 F.Supp.2d 157, 161 n. 4 (D.Me.2001) ("...the Government seemed to concede that marijuana and mushrooms are not as easy to destroy as other drugs, such as cocaine.") *reversed* 319 F.3d 4 (1st Cir. 2003), *cert. denied* —— U.S. ——, 124 S.Ct. 920, 157 L.Ed.2d 742 (2003).

■ The nature of the offense matters. *See Welsh v. Wisconsin*, 466 U.S. 740, 751–53, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (felony v. misdemeanor).

■ The suspect matters. In *Ramirez*, the Court noted the defendant was "a prison escapee with a violent past who reportedly had access to a large supply of weapons. He had vowed that he would 'not do federal time.' " 523 U.S. at 71, 118 S.Ct. 992. *United States v. Pinson*, 321 F.3d 558, 567 (6th Cir.2003) ("Knowledge by law enforcement officers that the occupants of the premises are armed and dangerous can be an important factor.").

■ Whether the suspects are up and about matters. The *Banks* search took place at 2:00 p.m. Wednesday afternoon. *Id.* at 523. Executing a search warrant at 1:40 a.m., when the residents of an apartment are apparently asleep is different from executing a search warrant at 3:05 p.m., when they are not. *Compare Griffin v. United States*, 618 A.2d 114 (D.C.1992) *with Pinson*, 321 F.3d at 567; *United States v. Jerez*, 108 F.3d 684, 690 (7th Cir.1997)("The special vulnerability of the

individual awakened at the privacy of his place of repose during the nighttime hours to face a nocturnal confrontation with the police was recognized in the common law that antedates our separation from England."). Generally, if the police know the suspects are up and about, less time is required between the knock and announce and the entry. *Compare Williams*, 800 So.2d at 826–27 (5 to 15 second lapse at 4:00 a.m. reasonable when police could see people running around in the home); *with United States v. Gallegos*, 314 F.3d 456, 457–58 (10th Cir.2002) (5–10 second lapse insufficient at 4:00 a.m. when no indication of activity).

■ The length of the delay matters. There are "no bright line rules about the amount of time officers must wait after they announce". *Sargent*, 319 F.3d at 11. In *Sargent*, for example, the First Circuit concluded a mere five second delay between announcement and entry was reasonable, since the police were aware the suspect had a large number of knives and possibly firearms in his small apartment. *Id.* at 10. The First Circuit concluded the police had "reasonable suspicion that their safety would be threatened by further delay." *Id. Sargent*, however, cites a number of cases where five seconds or less has been held unreasonable. *Id.* at 9 (collecting cases). Moreover, the First Circuit concluded "absent that threat, the constitutional calculus in this case might be quite different" and "serious Fourth Amendment concerns are validly raised when the response time between announcement and entry is so truncated." *Id.* at 11.

■ Other factors. This is not an exhaustive list. The likelihood of escape, the number of police officers, the number of

("...there is no reason generally to peg the travel time to the location of the door, and no reliable basis for giving the proprietor of a mansion a longer wait than the resident of a

bungalow, or an apartment like Banks's."). Rather, it was in *Banks* the "time someone would need to get in a position to rid his quarters of cocaine." *Id.*

suspects, the amount of suspected drugs, and a host of other factors may be material when viewing the totality of the circumstances under the Fourth Amendment reasonableness standard.

### 2. Applying the Law to the Facts.

### a. No Exigent Circumstances.

■ First, the Government does not argue there are grounds to apply the doctrine of exigent circumstances. This Court agrees. The First Circuit has listed four categories of exigent circumstances: 1) risk to the lives or health of the investigating officers; 2) risk that the evidence sought will be destroyed; 3) risk that the person sought will escape from the premises; and, 4) "not pursuit" of a fleeing felon. *United States v. Beaudoin*, 362 F.3d 60, 66 (1st Cir.2004); *United States v. Tibolt*, 72 F.3d 965, 969 (1st Cir.1995). Other than the inherent risk that any suspected drug dealer could be violent, there is no evidence in this record that these suspects were dangerous or they presented a risk to the lives or health of the investigating officers. Further, there was no indication the police were seeking evidence that could be quickly destroyed. Finally, the camp was remote and was surrounded by officers; there is no evidence that there was a significant risk of escape.

### b. "Totality of the Circumstances."

■ Once the danger to person and destruction of evidence exceptions are

eliminated, this Court finds a less than five second delay between announcement and entry fails to meet constitutional muster.

■ What is searched: the search was to take place at the camp where the suspects were living. There is no evidence whether the camp was the Defendants' permanent or temporary residence; however, the expectation of privacy in one's home is "usually by analogy extended to searches in a person's hotel or motel room, which is a sort of temporary home." *Beaudoin*, 362 F.3d at 65..

What is sought: hey were thought to be engaged in a "large grow" marijuana operation in a relatively open manner, if in an isolated region. This is significant, because, among other things, there was no evidence of easily disposable drugs.

The nature of the offense: the likely charges were felony drug offenses.[7] There was no direct evidence of the involvement of other drugs. There was no pre-search evidence of the presence of firearms or other dangerous weapons.[8]

The suspects: there was no information at all about the character of the suspects, their past criminal activity, if any, or proclivities toward violence.

Whether the suspects were up and about: the search took place at 9:15 a.m., but there is no indication in this record

---

7. The Defendants were ultimately indicted for violation of 21 U.S.C. § 841(a)(1) & 846, conspiracy to possess with intent to distribute marijuana; 21 U.S.C. § 841(a)(1), manufacture of marijuana; 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug crime; and, 18 U.S.C. § 922(k), possession of a firearm with an obliterated serial number; as well as 21 U.S.C. § 853(a), criminal forfeitures.

8. There is a certain logic behind a rule distinguishing drug searches from other crimes. Compared with searches for other crimes, it could be argued drug searches always present a greater likelihood of firearms or other dangerous weapons, (as turned out to be the case here), of disposable drugs (as did not turn out to be the case here), and of danger of physical harm. However, *Richards* rejected carving out a broad exception in favor of a case by case analysis. 520 U.S. at 396, 117 S.Ct. 1416.

that the officers thought the suspects were up when they entered.[9]

The length of the delay: this Court has accepted the Magistrate Judge's finding that the time that elapsed between announcement and entry was "several seconds (five being the outside maximum)."

Other factors: the application does not reveal anything about the number of potential suspects in the camp; Lt. Young testified they did not know whether anyone was inside. There were six law enforcement officers taking part in the search and the camp was both isolated and surrounded.

Based on the "totality of the circumstances," this Court concludes the search of the camp on June 11, 2002 violated the common law "knock and announce" principle under *Wilson v. Arkansas* and hence, the protections of the Fourth Amendment. This conclusion is consistent with conclusions of Judge Carter of this District on strikingly similar facts. *United States v. Holmes,* 175 F.Supp.2d 62, 73 (D.Me.2001).

### 3. The Remedy.

#### a. The Magistrate Judge's Recommendation.

The Magistrate Judge's Recommended Decision is consistent with this opinion, except for the recommended remedy. She concludes "more than several seconds would have been required to fairly comply with the intent of the knock and announce rule on the basis of the totality of the circumstances known to the officers at the time of entry." *Recommended Decision* at 10. In her Recommended Decision, however, Magistrate Judge Kravchuk noted that "trial courts have not always applied

rigidly the exclusionary sanction to what might be denominated technical violations of the knock and announce rule." *Id.* at 11. Magistrate Judge Kravchuk pointed out there was no forcible entry or ruse, guns were not drawn at the moment of entry, and there was no confrontation or real danger to any person. She noted if she could find the officers had waited even seven or ten seconds, the same facts could become constitutionally reasonable. In light of all these facts, she rejected a "mechanistic operation of the knock and announce rule," concluding the "core values of the Fourth Amendment were not violated by the manner and methods used to search this camp." *Id.* at 12–13.

#### b. The Exclusionary Rule and *Leon.*

Magistrate Judge Kravchuk's recommendation against the exclusion of evidence gathered in violation of the Fourth Amendment has a cogent ring of practicality.[10] It draws support from a line of Supreme Court authority that restricts application of the exclusionary rule "to those areas where its remedial objectives are most efficaciously served." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). In *United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), Justice Powell wrote that the Supreme Court has "consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury. (citation omitted) After all, it is the defendant, and not the constable, who stands trial."

Nevertheless, this Court concludes that the illegally seized evidence in

---

9. As it turned out, they were asleep. One was in the loft; the other was on a couch inside the main part of the camp.

10. It is the constitutional equivalent to the time honored "no harm—no foul" rule.

this case must be suppressed. In *Mapp v. Ohio*, 367 U.S. 643, 646, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), Justice Clark traced the Fourth Amendment exclusionary rule to *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886), where the Supreme Court declared the use of illegally seized evidence "unconstitutional." *See McNabb v. United States*, 318 U.S. 332, 339–40, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Olmstead v. United States*, 277 U.S. 438, 462, 48 S.Ct. 564, 72 L.Ed. 944 (1928); *Silverthorne v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920) (such evidence "shall not be used at all.")(Holmes, J.) (questioned in *United States v. Havens*, 446 U.S. 620, 624, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Weeks v. United States*, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914)("conviction by means of unlawful seizures...should find no sanction in the judgments of the courts"), *overruled on other grounds, Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)). In *Mapp*, the Supreme Court wrote that "the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments..." *Mapp*, 367 U.S. at 657, 81 S.Ct. 1684.

Since *Mapp*, however, the Supreme Court clarified that the Fourth Amendment has "never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons."[11] *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)); *see also Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); *Payner*, 447 U.S. at 734, 100 S.Ct. 2439; *Calandra*, 414 U.S. at 348, 94 S.Ct. 613. In *Leon*, the Supreme Court concluded "the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Leon*, 468 U.S. at 900, 104 S.Ct. 3405.

### c. Conclusion.

■■■ It requires an expansive reading of *Leon* and *Payner* to conclude the illegally seized evidence in this case should be admitted in the prosecution's case-in-chief. The First Circuit interpreted *Leon* as recognizing the "purpose of this exclusionary rule is to deter police misconduct." *United States v. Capozzi*, 347 F.3d 327, 332 (1st Cir.2003). If, as in *Leon*, police misconduct is not the cause of the constitutional violation, the suppression does not "logically contribute to the deterrence of Fourth Amendment violations." *Id.* (quoting *Leon*, 468 U.S. at 921, 104 S.Ct. 3405).

---

**11.** *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *see also California v. Minjares*, 443 U.S. 916, 927–28, 100 S.Ct. 9, 61 L.Ed.2d 892 (1979) (Rehnquist, J. dissenting) ("The reasons for applying the exclusionary rule in the criminal trial...are substantially weaker today than they were either in 1949, when *Wolf v. California* was decided, or in 1961, when *Mapp v. Ohio* was decided."); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 421, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Burger, C.J. dissenting) ("I see no insuperable obstacle to the elimination of the suppression doctrine if Congress would provide some meaningful and effective remedy against unlawful conduct by government officials."). *See United States v. Stefonek*, 179 F.3d 1030, 1035 (7th Cir.1999) (Posner, C.J.) ("And so we were right when we said earlier that the violation of the Fourth Amendment in this case did not harm to any of the interests that the amendment protects, so that exclusion of the evidence seized under the warrant would be a disproportionate sanction.") *See generally*, W.R. LaFave, Search and Seizure, § 1.2 (1996 ed.) (The Exclusionary Rule Under Attack).

However, where police misconduct is involved, *Leon* does not impose a "good faith" test on whether illegally seized evidence should be excluded. *United States v. Ricciardelli*, 998 F.2d 8, 15 (1st Cir. 1993)("the exclusionary rule is alive and well").

This case does not involve a defective search warrant. *Leon*, 468 U.S. at 900, 104 S.Ct. 3405. It does not involve a refused no-knock search warrant. *Richards*, 520 U.S. at 395–96 n. 7, 117 S.Ct. 1416; *Sargent*, 150 F.Supp.2d at 161. It does not involve an allegation of the improvident granting of a no-knock warrant. *See United States v. Scroggins*, 361 F.3d 1075 (8th Cir.2004); *Herrick*, 567 N.W.2d at 343–44, 588 N.W.2d at 852. It does not involve prior knowledge of the presence of "a large quantity of drugs and a weapon." *United States v. Brown*, 276 F.3d 14, 15 (1st Cir.2002) (Opinion of Stahl, J.). The Government has not made an "officer safety" argument. It has not made a destruction of evidence argument. The officer did not rely upon the magistrate in deciding how long to wait before entering. Since this Fourth Amendment violation is focused on the officers', not the magistrate's conduct, the deterrent value of the exclusionary rule is direct.

When officers are standing before a residence, the "very core" of the Fourth Amendment, *Kyllo*, 533 U.S. at 31, 121 S.Ct. 2038, armed with a search warrant with probable cause to believe the residents possess non-easily disposable drugs, without any prior knowledge of the presence or likelihood of firearms or other dangerous weapons, without any prior information of the criminal histories or violent proclivities of the residents, without any evidence of movement within the resident, violate the "knock-and-announce" rule, this Court concludes the evidence gathered as a consequence of the illegal search must be suppressed.[12] Generally, the federal courts in Maine have imposed exclusion as the sanction for such violations. *See, e.g. Holmes*, 175 F.Supp.2d at 77; *Sargent*, 150 F.Supp.2d at 160 (suppressing evidence from a "no-knock search"), *reversed* 319 F.3d 4 (1st Cir. 2003), *cert. denied* —— U.S. ——, 124 S.Ct. 920, 157 L.Ed.2d 742 (2003). Further, federal courts have routinely excluded illegally seized evidence when the "knock-and-announce" rule has been violated.[13] *Dice*, 200 F.3d at 987 (affirming suppression order); *Granville*, 222 F.3d at 1220 ("... any evidence acquired as a result of the search should have been suppressed."); *Moore*, 91 F.3d at 99 (... (W)e AFFIRM the order of the district court granting Mr. Moore's motion to suppress all evidence seized"); *United States v. Wallace*, 931 F.Supp. 1556, 1564 (M.D.Ala.1996) (granting motion to suppress for knock-and-announce violation).

## IV. CONCLUSION

This Court GRANTS Defendants' Motions to Suppress.

**SO ORDERED.**

---

**12.** The Magistrate Judge assumed if the officers had waited only a few more seconds, the search would have met constitutional muster. In the circumstances of this case, in absence of any destruction of evidence or danger to person arguments, this is not entirely clear.

**13.** The Government has not argued "inevitable discovery," which if applicable, could lead to a different result. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Scott*, 270 F.3d 30, 42 (1st Cir.2001); *People v. Stevens*, 460 Mich. 626, 642–43, 597 N.W.2d 53, 61 (1999).